UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
ANGELIQUE McPHERSON, *on behalf of herself
and others similarly situated*,

                                                  **MEMORANDUM AND ORDER**
                                                  23-CV-04273 (JMA) (JMW)

                              *Plaintiff,*

              -against-

LOOK ENTERTAINMENT LTD. d/b/a BILLY
DEAN'S SHOWTIME CAFÉ, WILLIAM
BILLY DEAN and RORI GORDON,

                              *Defendants.*
------------------------------------------------------------------X

**A P P E A R A N C E S:**

       Penn A. Dodson, Esq.
       **Anderson Dodson, P.C.**
       11 Broadway, Ste 615
       New York, NY 10004
       *Attorney for Plaintiff*

       Gerald V. Dandeneau, Esq.
       **Dandeneau & Lott**
       425 Broadhollow Road
       Melville, NY 11747
       *Attorney for Defendants*

**WICKS**, Magistrate Judge:

       Plaintiff Angelique McPherson ("Plaintiff"), worked as a dancer for 4-5 months at Billy Dean's Showtime Café ("Club").[1] The Club is owned by Defendant Look Entertainment Ltd., and

---

[1] The Club is an adult strip club located in North Bellmore, New York. *See* https://www.billydeans.com/billy-deans-bellmore.

managed by Defendants William Billy Dean and Rori Gordon (collectively, "Defendants"). According to Plaintiff, her pay was though tips only, some of which she was required to be turned over to the owner of the Club. (ECF No. 28 at 2). She contends she never received paystubs and that the payroll documents "bore no resemblance" to actual practice (*Id.*) Defendants sharply dispute Plaintiff's account. (*Id.*) Indeed, say Defendants, the payroll documents are accurate, at all times Plaintiff was paid well above minimum wage, and no tips were ever turned over to management. (*Id.*) The parties consented, pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, to the undersigned for purposes of the settlement approval motion and to enter a final order (*see* ECF No. 30). For the following reasons, the Joint Motion for Settlement Approval of FLSA Settlement (ECF No. 28) is hereby **GRANTED**.

## FACTUAL BACKGROUND

Plaintiff was a performer for Billy Dean's Showtime Café as a dancer from September 1, 2021, to March 16, 2022. (ECF No. 1 at ¶ 21.) Defendant Look Entertainment Ltd d/b/a Billy Dean's Showtime Café ("Billy Dean's") is a corporation whose principal place of business is located at 1538 Newbridge Rd, North Bellmore, NY. (*Id.* at ¶ 23.) Billy Dean's is a so-called "gentlemen's club" or adult entertainment strip club. Individual Defendants are William "Billy" Dean ("Dean") and Rory Gordon ("Gordon"), both of whom reside in Nassau County. (*Id.* at ¶ 11-12.) Both Defendants actively participated in the business of the corporation and exercised substantial control over the functions of the company's employees, including Plaintiff. (*Id.* at ¶ 13-16.) At bottom, Plaintiff claims Defendants are alleged to have failed to pay minimum wage, to keep employee records, to provide break time, and to provide pay stubs/wage notices/tip notices. (*Id.* at ¶¶ 50-54, 57-58, 61-68.) Plaintiff additionally alleged Defendants engaged in improper tip practices and improper deductions from employee wages. (*Id.* at ¶ 59-60.)

Billy Dean's was open Thursday, Friday, and Saturday nights, from 10:00pm to 4:00am. (*Id.* at ¶ 23.) McPherson worked three shifts a week which she estimated to be a total of approximately 20 hours. (*Id.* at ¶ 24-26.) Plaintiff and other workers similarly situated would not clock in and out at the beginning and end of shifts to keep track of their hours worked. (*Id.* at ¶ 27.) Instead, performers were required to sign something to record that they had been in attendance for their shift, but their hours worked were not recorded. (*Id.*) Customers would pay dancers in cash, and dancers were expected to give the cash to the manager of the shift, who would record how much cash was received and which dancer earned it. (*Id.* at ¶ 28.) It was expected that Billy Dean's and the dancer would each receive a "cut" of the cash received. (*Id.* at ¶ 29.) Plaintiff and similarly situated dancers would receive their pay in cash at the end of each shift after signing their name next to where their name was type-written on a piece of paper. (*Id.*)

During Plaintiff's employment, she never received paystubs or any notification from an online equivalent. (*Id.* at ¶ 30.) Plaintiff left Billy Dean's to work for a different company that utilized ADP payroll processing. (*Id.* at ¶ 31.) When she utilized ADP payroll processing to check the paystubs for her new job, she had access to payroll records pertaining to Billy Dean's which she was unaware of previously. (*Id.*) Plaintiff found that these records had made it appear that she been working on an hourly basis, which she was not, and the quantity of hours worked did not reflect the hours she actually worked. (*Id.* at ¶ 32.) Defendants sent Plaintiff a W2, and it did not reflect the reality of how much Plaintiff was paid or how many hours she had worked. (*Id.* at ¶ 33.)

On June 9, 2023, Plaintiff commenced this action seeking to recover unpaid or underpaid wages and related damages pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* and New York Labor Law ("NYLL") § 650, and 12 N.Y.C.R.R. Part 146 (ECF No. 1). Following the Initial Conference held on September 26, 2023, the parties engaged in discovery

and then engaged in motion practice over conditional certification as a collective. On September 23, 2024, the Court granted in part and denied in part the motion to certify as a collective. (ECF No. 25.) In the interim, the parties pursued mediation before Mediator Anthony DiCaprio of the EDNY Mediation Panel, and successfully resolved the dispute. (ECF No. 27.) Thereafter, the parties filed the joint motion for settlement approval under *Cheeks v. Freeport Pancake House, Inc.* (ECF No. 28), consented to the undersigned (ECF Nos. 29 and 30), and the matter thereafter referred to the undersigned to conduct all proceedings and enter a final order. (Electronic Order dated 11/25/2024).

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 41 provides, in relevant part, that:

Subject to . . . any applicable federal statute, the plaintiff may dismiss an action without a court order by filing:

(i)   a notice of dismissal before the opposing party serves either an answer of a motion for summary judgment; or

(ii)  a stipulation of dismissal signed by all parties who have appeared.

Fed. R. Civ. P. 41(a)(1)(A).

In *Cheeks v. Freeport Pancake House Inc.*, 796 F.2d 199 (2d Cir. 2015), the Second Circuit held that the FLSA is an "applicable federal statute" under Rule 41 because of "the unique policy considerations underlying" the act. *Cheeks*, 796 F.3d at 206. Such considerations include the laudable aim of "'extend[ing] the frontiers of social progress by insuring to all our able-bodied working men and women a fair day's pay for a fair day's work.'" *Id.* (quoting *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945)). Thus, in this Circuit, Rule 41's "stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the [Department of Labor] to take effect." *Id*.

4

"Generally, if the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved" by the reviewing court. *Ceesae v. TT's Car Wash Corp.*, No. 17-CV-291 (ARR) (LB), 2018 WL 1767866, at *2 (E.D.N.Y. Jan. 3, 2018) (internal quotation marks and citation omitted), *report and recommendation adopted*, 2018 WL 741396 (Feb. 7, 2018). In reviewing the reasonableness of the proposed settlement, courts consider the totality of the circumstances, including relevant factors such as:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (internal quotation marks and citations omitted) ("*Wolinsky* Factors").

Factors weighing *against* settlement approval include:

> (1) the presence of other employees situated similarly to the claimant; (2) a likelihood that the claimant's circumstance will recur; (3) a history of FLSA non-compliance by the same employer or others in the same industry or geographic region; and (4) the desirability of a mature record and a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace.

*Id*. (internal quotation marks and citations omitted).

Even if an application of the *Wolinsky* Factors demonstrates that the agreement is reasonable, the court must also consider whether the settlement "complies with the Second Circuit's admonitions as articulated in *Cheeks*." *Ezpino v. CDL Underground Specialists, Inc.*, No. 14-CV-3173 (DRH) (SIL), 2017 WL 3037483, at *1 (E.D.N.Y. June 30, 2017) (citation omitted), *report and recommendation* adopted, 2017 WL 3037406 (E.D.N.Y July 17, 2017). Courts should guard against "highly restrictive confidentiality provisions," overbroad releases that "would waive practically any possible claim against the defendants, including unknown claims

5

and claims that have no relationship whatsoever to wage-and-hour issues," and "a[ny] provision that would set the fee for plaintiff's attorney . . . without adequate documentation." *Cheeks*, 796 F.3d at 206 (citation omitted).

Related to the final admonition, courts must also ensure that any attorney's fees provided for in the agreement are reasonable. *See* 29 U.S.C. § 216(b) ("The Court . . . shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a *reasonable* attorney's fee to be paid by the defendant, and costs of the action."); *see also Ceesae*, 2018 WL 1767866 at *2 (noting that courts engaging in a *Cheeks* review must "evaluate[] the reasonableness of any attorney's fees included in the proposed settlement" (citing 29 U.S.C. § 216(b)).

Where a court "concludes that a proposed settlement in a FLSA case is unreasonable in whole or in part, it cannot simply rewrite the agreement, but it must instead reject the agreement or provide the parties an opportunity to revise it." *Fisher v. SD Protec. Inc.*, 948 F.3d 593, 597 (2d Cir. 2020). That is, it is not this Court's role to "blue pencil" or modify the proposed agreement. Rather, the Court's role is simply to assess the terms of the proposed settlement to ensure that the agreement is fair and reasonable. *Wolinsky*, 900 F. Supp. 2d at 335 ("[B]efore a district court enters judgment, it must scrutinize the settlement agreement to determine that the settlement is fair and reasonable."). It is against this backdrop that the undersigned reviewed the proposed settlement.

## DISCUSSION

Following a court-annexed mediation the parties finally achieved a settlement (ECF No. 27), executing and filing a proposed settlement agreement ("Settlement Agreement") for the Court's review and approval. (ECF No. 28.) In short, the settlement provides that Plaintiffs' claims in this suit would be dismissed with prejudice against Defendants, who would pay a total of $45,000 as follows:

6

1. $10,000 payable to Plaintiff;

2. $10,000 held as a "claims fund" for any individuals who may opt in. (If none opt in, monies to be returned to Defendants.); and

3. $25,000 payable to Plaintiff's counsel AndersonDodson, P.C. for attorneys' fees and expenses.

(ECF No. 28-1.)

Based on the parties' submissions—the parties' request for settlement approval and the executed Settlement Agreement, the Court finds that the application of the *Cheeks* factors favor approval. *First,* according to Plaintiff's estimated calculation of damages, this settlement makes up a satisfactory portion of Plaintiffs' potential, best-case scenario recovery, particularly in light of the expenses and risks associated with continuing litigation, as discussed below. *Second*, the Court is persuaded that settlement here avoids substantial and extensive further litigation costs. Although this action was commenced in 2023, the parties' focus on trying to resolve the case has placed the parties are at a relatively early stage of discovery. The Court finds that the proposed settlement will allow the parties to undoubtedly avoid the inevitable burdens and expenses in extensive discovery, document drafting, and research that would accompany this matter on its inevitable path to trial. Thus, this factor weighs in favor of approval.

*Third*, there is a *bona fide* dispute between the parties and settlement is a means of avoiding significant litigation risks for both sides. Plaintiffs and Defendants each presented wage and hours evidence that a trier of fact could reasonably find quite persuasive. Plaintiffs allege over $530,000 in damages, while Defendants assert that they do not owe anything to the Plaintiffs. (*Id.*) *Fourth*, the Court finds that the parties have properly engaged in bargaining at arms-length to reach this settlement agreement. This is evinced by the parties attending an EDNY FLSA mediation and the

work of their experienced counsel in both preparation for that mediation, as well as engagement in post-mediation settlement discussions.

*Fifth*, the parties and counsel negotiated in good faith and agreed upon the terms within the Settlement Agreement. (*See* ECF No. 28-1.) Plaintiffs represent, and the ultimate number indeed reflects, that all parties made compromises on their positions, financially and otherwise, to achieve a fair and reasonable settlement. (*Id.*) Accordingly, there is no indication in the record that the settlement is a product of fraud, coercion, or collusion. In sum, the parties have come to a reasonable settlement after arms-length negotiations which permits them avoiding the risks and burdens of litigating this dispute.

The next part of the analysis is application of the *Wolinsky* factors to determine whether any weigh against settlement and compel rejection of the otherwise valid settlement. *First*, as to whether there are similarly situated workers employed by Defendants, Plaintiffs filed the action as a proposed collective action as authorized by the FLSA, § 29 U.S.C. § 216(b). (*See* ECF No. 1.) Conditional certification was granted (ECF No. 25), however, the parties report to date no opt-in forms received nor have there been any queries. (ECF No. 28 at 2.) The opt-in period ends December 24, 2024. (ECF No. 28-1 at 2.) In addition, the parties negotiated that $10,000 would be held in a settlement fund and developed a formula for allocation to any opt-ins should any surface. In the event there are none, the funds are returned to Defendants. (*Id.*) Further, the proposed Settlement Agreement releases Defendants from the claims brought only by Plaintiffs. Opt-ins only give releases if they receive funds under the Agreement.

*Second*, given the time and resources spent during the litigation process, as well as the issues arising from Defendants' financial viability, it is likely that the Defendants will be deterred from violating the FLSA and NYLL, as alleged by Plaintiffs, in the future. It is also unlikely that

8

Plaintiff's individual circumstances will reoccur. *Third*, the Court finds that the record is bereft of any history of non-compliance with the FLSA by the same employer or other employers in the same industry or geographic region. Further, the parties have not suggested otherwise. *Fourth*, the Court acknowledges the desirability of a mature record. Here, however, that interest is not implicated. Nonetheless, this factor alone does not compel denying a motion for approval of this settlement. While it is possible that further discovery could reveal more information as to similarly situated workers or a proper calculation of hours worked by Plaintiff, the cost and protraction is outweighed by any anticipated recovery. That is, more discovery is unlikely to lead to any greater recovery.

*Finally*, the proposed Settlement Agreement does not contain any of the problematic provisions that are identified in *Cheeks*. There is no confidentiality provision, the release is not overbroad, there is no restriction on Plaintiff's counsel from representing others bringing similar claims against Defendants or economic desperation of Plaintiff. (ECF No. 28 at 3.) The Settlement Agreement also contains a provision for an amount certain in attorney's fees. As such, review of the settlement also includes review of the reasonableness of the claimed attorney's fees and expenses.

"In an FLSA case, the Court must independently ascertain the reasonableness of the fee request." *Gurung v. White Way Threading LLC*, 226 F. Supp. 3d 226, 229–30 (S.D.N.Y. 2016) (citation omitted). Courts in this Circuit routinely approve of one-third contingency fees for FLSA cases. *See, e.g.*, *Calle v. Elite Specialty Coatings Plus, Inc.*, No. 13-CV-6126, 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 12, 2014) (citing *Rangel v. 639 Grand St. Meat & Produce Corp.*, No. 13-CV-3234, 2013 WL 5308277, at *1 (E.D.N.Y. Sept. 19, 2013)); *see also Fischer v. SD Protection Inc.*, 948 F.3d 593, 602 n.8 (2d Cir. 2020) (citing cases); *Singh v. MDB Construction Mgmt., Inc.*,

9

No. 16-CV-5216 (HBP), 2018 WL 2332071, at *2 (S.D.N.Y. May 23, 2018) (noting that one-third of settlement is "normal rate").

Even where fees are reasonable when analyzed under the percentage method, courts will additionally perform a lodestar "cross-check" and "compare the fees generated by the percentage method with those generated by the lodestar method." *Mobley v. Five Gems Mgmt. Corp.*, No. 17-Civ.-9448 (KPF), 2018 WL 1684343, at *4 (S.D.N.Y. Apr. 6, 2018) (citations omitted). "[W]here [the lodestar method is] used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court. Instead, the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000); *see also In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 388–89 (S.D.N.Y. 2013) ("Because the lodestar is being used merely as a cross-check, it is unnecessary for the Court to delve into each hour of work that was performed by counsel to ascertain whether the number of hours reportedly expended was reasonable.") (quoting *In re IPO Sec. Litig.*, 671 F. Supp. 2d 467, 506 (S.D.N.Y. 2009)).

Here, Plaintiffs' counsel requests a total of $25,000 for attorney's fees out of the $45,000 settlement. The retainer letter[2] provides the following as to fees:

> AndersonDodson's fees will be the *greater* of the following (never to exceed the amount that the Firm recovers on your behalf):
>
> - thirty-five percent (35%) of the total amount recovered on your behalf or in pursuit of your claim (including any portions called or referred to as attorney's fees); OR
>
> - the amount computed from our billable rates (see below for our hourly rates) and the actual time that the Firm expends on your case**;

---

[2] There are actually two retainer agreements, namely, one for "outside of court" (ECF No. 28-3) and a second for "in formal proceedings." (ECF No. 28-4.) At the *Cheeks* hearing held January 7, 2025, Plaintiffs' counsel conceded that one agreement was really a continuation of the other. (ECF No. 33.) That is, there are not two separate agreements under which fees are sought. (*Id.*) In any event, the material provisions of both are the same.

10

- $3,000.00

(ECF No. 28-4. at 2.) Counsel specifically seeks fees under the second scenario, namely, amounts computed from billable time. The amount sought here, $25,000, represents a significant reduction of the actual time expended on the matter. (*See* ECF No. 28-5.) The actual billable time recorded amounts to $32,082 through November 7, 2024. (ECF Nos. 28-3, 28-4). Additional time has been expended through the *Cheeks* motion process. The amount in fees does not exceed the total amount of recovery of $45,000. The amount of time and resources expended was necessary to achieve the result through settlement. Plaintiffs' counsel has vast experience in the area, and the billing records reflect efficiency. Accordingly, the fees sought through the settlement are both fair and reasonable.

## CONCLUSION

For the foregoing reasons, the parties' joint motion for approval of the Settlement Agreement (ECF No. 28) is **GRANTED**, and the Clerk of the Court is respectfully directed to close this case.

Dated: Central Islip, New York
　　　　January 7, 2025

S O　O R D E R E D:

/S/ *James M. Wicks*
JAMES M. WICKS
United States Magistrate Judge

11